UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-247-H

GARY L. CARVER  PLAINTIFFS
And
AMANDA PRICE

v.

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, ET AL.  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Defendants, Louisville/Jefferson County Metro Government, Louisville Metro Police Department, Chief Steve Conrad and interim Chief Ishmon F. Burks Jr. and Officers Charles Meek and Michael Trevino have moved for summary judgment in this unreasonable search and excessive force case.

Plaintiff, Gary Carver's alleges unreasonable search and seizure, assault, battery and physical restraint, excessive force against Meek and Trevino. He asserts that the violations were committed as result of the policies and customs of Louisville/Jefferson County Metro Government and the Louisville Metro Police Department.

Plaintiff, Amanda Price, claims that Meek conducted an unreasonable search and seizure, that arose also from policies and customs of Louisville Metro Government and the Metro Police Department.

The main problem with Defendants' claims for summary judgment arise with the claims against Meek.  The objective evidence contradicts much of his deposition testimony and could lead a reasonable jury to completely disbelief him.  This could result in a judgment against him in the claims of both Carver and Price.

**I.**

The facts of this case center around Carver's arrest in the early morning hours of January 14, 2012. Meek was the arresting officer. Just after 12 A.M. he received a run to 1508 Arling Avenue for investigation of a domestic violence complaint. In his deposition, Meek testified that he discussed the case with the victim who said that her son, Eric Wright, had punched her in the head. She described Eric as a 6 foot tall, thin black male with dreads, a backpack and a dark shirt. She believed that Eric would be walking toward Lyndhurst Avenue.

Meek put out a BOLO (be on the lookout) to his partner Trevino who was not present. According to Meek, Metro Police Standard Operating Procedures required him to follow-up and look for the individual and he began that process. Meek observed an individual in a dark shirt and dark pants with backpack walking a few blocks away on Lonsdale Avenue who he later discover was Carver.

Meek exited his vehicle and announced the name Eric. Meek asked for his identification. Carver stated that he left his identification at his home located at 1417 Lynnhurst Avenue and was going to his mother's home on Taylor Avenue. At this crucial juncture the parties began to differ on the recollection of events. Unfortunately for Meek, Carver made a partial audio recording of events. At some point during the proceedings Trevino arrived.

Carver testified that Meek arrived and called him by someone else's name. He called back that Eric was not his name. Meek told him to put his hands on the car and takes him down apparently in a struggle over Carver's recording device.

Meek told Carver he fit the description of someone. Carver got angry used profanity. He denies ever saying "go ahead and search me." He did tell them to search his backpack but

2

Trevino was already in the process before he gave his consent. Carver did tell Meek and Trevino that he didn't have a "State Id." He was told to stop resisting but denied resisting.

Carver was taken to the jail and charged with disorderly conduct; interfering with an officer and transported to the Department of Corrections. The criminal charges were dismissed by the District Court.

According to Meek he believed a search was necessary for officer safety because the area is known for drug-trafficking; heroin use; more people "packing weapons." It was 1:30 in the morning; Carver fit the description. Carver gave permission to search his backpack.

Trevino testified that he had no specific recollection of the dispatch. His first recollection of the event is hearing Meek's BOLO. He saw Meek pull up on Lonsdale and exit his vehicle.

Upon exiting his vehicle, Trevino saw that Carver had raised his voice and was yelling. Trevino acknowledges that he does not have authority to "pat down" everyone he stopped and further that Carver put his hands on the car and stated "go ahead." He remembers Carver kicking but does not remember if he conveyed that to Meek. Trevino admits securing Carver's leg.

Price testified later on the same day Meek stopped her on the grounds that her temporary tags in her back window were not visible. According to Price, Meek took her license and insurance card. Then, he threatened her with jail and separation from her children.

She testified that Meek advised there was a warrant on her and that he could take her to jail and send her kids to the Home of the Innocents. She admits that Meek probably did not know it was her vehicle and initially Meek didn't recognize her as Carver's girlfriend. She was allowed to leave the scene. Meek admits the encounter but denies a threat of jail but did advise him of a warrant for someone with a similar name.

II.

The Court must ask whether Meek and Trevino were aware of specific and articulable facts that gave rise to reasonable suspicion of criminal activity. *U.S. v. Young,* 707 F.3d 598 (6th Cir. 2012). Reasonable suspicion to justify a *Terry* stop requires more than a mere hunch, but less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. *Hoover v. Walsh,* 682 F.3d 481 (6th Cir. 2012). A short investigatory detention, rather than an arrest, requires only reasonable suspicion of criminal activity. *Sutton v. Metropolitan Government of Nashville and Davidson County,* 700 F.3d 865 (6th Cir. 2012).

The evidence is disputed concerning the precise initial description of Eric Wright. The Court finds that Meek had sufficient cause to ask Carver for his identification to eliminate him as the possible subject. Carver met the general body type description of the suspect Eric Wright and was wearing black clothing and was walking North on Lonsdale Avenue. It was after one A.M. in the morning when Meek approached Carver. Unfortunately, Carver was offended by the question and his reaction set into motion the series of events that followed.

The Courts have established that a reasonable amount of force may be used to effectuate an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, Meek testified that Carver was abusive and uncooperative. To say the least, Carver's recording of events disputes this. The recording does not affect Meek's right to stop Carver, but it certainly questions Meek's right to search and then arrest him. Trevino was back up and participated in the decision to search and arrest Carver.

Price's claim for unlawful search and seizure also survives summary judgment because a

jury could well believe that Meek was pretty clearly aware that Price did not violate any law. Further, his threats, after learning of her relationship with Carver could constitute a further unlawful seizure.

III.

Though Meek is not entitled to a summary judgment as a matter of law, he may still be entitled to a summary judgment based upon qualified immunity. If anything, the alleged injury of the Plaintiff resulted from an accident not the use of excessive force in violation of his constitutional rights.

Defendants in the course of performing discretionary functions, are shielded from liability for civil damages so long as their conduct did not violate the Plaintiff's clearly established statutory or constitutional rights. In *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) the Court stated:

> "By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences."

The Supreme Court has established a two-step sequence to consider whether an official had qualified immunity. *Saucier v. Katz*, 533 U.S.194 (2001). The threshold inquiry in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. Here, Carver can meet this first requirement on his claims against Meek only. Price cannot meet the requirement as to any Defendant.

5

The second issue is whether the right is clearly established. It is the plaintiff's burden to prove the specific right he claims the defendant violated. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. "Immunity applies if reasonable officials could disagree on whether the public official could have reasonably believed that his conduct was lawful." *Waters*, 242 F.3d at 361 (?) citing to *Caldwell v. Moore* , 968 F.2d 595, 599 (6th Cir. 1992.).

From the evidence and the changing testimony of Meek, a reasonable jury could easily conclude that they knowingly engaged in unlawful conduct.

IV.

A local government may be subject to liability in a §1983 action only for its own unconstitutional policies, customs, ordinances, or regulations, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy. *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978, *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985), *City of St. Louis v. Prapotnik*, 485 U.S. 112, *McMillian v. Monroe County, Alabama*, 520 U.S. 781 (1997), *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997). A municipal "policy" is a formally approved ordinance, regulation, or decision of a municipal body or a decision by an official. *Monell,* at 690 – 691, 694. A municipal "custom" includes those customs or practices, which, although not formally approved, are so widespread, permanent and well settled so as to have the force of law. *Id. Doe v. Claiborne County, Tennessee,* 103 F.3d 495,

507 – 508 (6th. Cir. 1996), *cited in Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005).

Further, failure to train can form the basis for municipal liability only where the inadequacy or inaction evidences a "deliberate indifference to the rights of persons" with whom officials come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff cannot establish failure to train liability merely by producing evidence that a training program is inadequate. A plaintiff must produce specific deficiencies, and establish that the inadequacy represents municipal policy. Finally, a plaintiff must produce evidence that the official policy or custom, or that the failure to train, can be directly linked to the injury. A plaintiff must do more than merely show proof of municipal conduct and proof of injury, because he is required to produce evidence of both fault and causation. *Brown v. O'Bryan County*, *supra*. A plaintiff is required to identify and prove a policy or custom that caused his particular constitutional injury. *Monell v. Brown*, *supra.*

Plaintiffs have not shown any evidence that a governmental policy contributed to the events here.

V.

The Louisville Metro Police Department is not sui juris and does not have the capacity to be sued. Civil Rule 17(b). KRS Chapter 67B. It is a department and division of the Louisville/Jefferson County Metro Government. *Id.* Because it has no illegal identity separate and apart from the Louisville/Jefferson County Metro Government, it is not a person within the meaning of 42. U.S.C. § 1983. *Higgenbottom v. McManus*, 840

F.Supp. 454, 456 (W.D. Ky. 1994), *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), *Smallwood v. Jefferson County Government*, 743 F.Supp. 502, 503 (W.D. Ky. 1990).

Chief Conrad and former interim chief Burks are not proper parties and, in fact, neither Plaintiff made any direct claim of the promulgation or implementation of a policy procedure or practice by either Defendant in violation of the Plaintiff's constitutional rights.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED IN PART and the following claims are DISMISSED WITH PREJUDICE:

(1) All Plaintiffs' claims against Conrad and Burks; and

(2) All Plaintiffs' claims against Louisville Metro Government and Louisville Metro Police.

Defendants' motion is DENIED as to the following claims:

(1) All Carver's claims against Meek and Trevino remain, and

(2) Price's claim against Meek for an unlawful search and seizure.

This is not a final order.

cc: Counsel of Record